## THE MORZHOVOI.

District Court, W. D. Washington, N. D.
April 27, 1927.

No. 11358.

**1. Salvage ☞18—Seamen may make salvage claim, though vessel does not.**

That the vessel makes no salvage claim does not deprive the seamen of such right, if salvage service was in fact rendered.

**2. Salvage ☞13—Towing gas schooner 200 miles to port held "salvage service."**

Towing gas schooner, disabled in rough seas, to port, over 200 miles, on receiving her distress signal, *held* "salvage service."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Salvage Service.]

In Admiralty. Suit by H. C. Larsen, for himself and others interested, against the Gas Screw Morzhovoi. Decree for libelants.

Winter S. Martin and Arthur Collett, Jr., both of Seattle, Wash., for libelants.

Bogle, Bogle & Oates, of Seattle, Wash., for claimant.

NETERER, District Judge. The Morzhovoi, a cannery tender, while crossing the Gulf of Alaska, lost her rudder stock in rough seas for several days about 45 or 50 miles off Ocean Cape, approximately 127 miles E. S. E. of Cape St. Elias, on August 30, 1926, at 3:30 p. m. She was hove to under staysail and mainsail until 5 a. m. of the following morning (sounding 107 fathoms at 11 p. m.; 114 fathoms, August 31, at 2:30 a. m.). The steamer Derblay on a regular run from southeastern Alaska ports to Cordova, was signaled by flares at 5:30 a. m., August 31, and came alongside the Morzhovoi and was requested to tow the Morzhovoi to Yakctat, about 50 miles. The master of the Derblay declined, but offered to tow to Cordova, his objective, something over 200 miles. This was agreed to. Towline was passed and fastened, and they arrived at Cordova at 8:40 the next morning.

At the time the distress signal was seen, the chief officer was on watch in the pilot house, with the quartermaster at the wheel, and a lookout on forward deck. The rest of the deck crew were in their berths. It was just at daybreak. There was a moderate E. S. E. breeze and a choppy sea. The deck officer called Collins, Anderson, and Bratt, three members of the deck crew, from their berths to assist in putting a line aboard the Morzhovoi. Collins heaved the line to the Morzhovoi, and Bratt and Anderson made the same fast aboard the Derblay. No other men assisted in this operation.

Larsen, the third mate, Collins, a winch driver, and 12 other seamen, bring this libel for salvage service. Neither the Derblay nor any other member of the crew have made any claim. The Morzhovoi, a gas schooner of 81 gross and 63 net tons, 80.2 feet in length, 18.9-foot beam, 7 6 feet in depth, was appraised and insured in the sum of $25,000. The cost of repairs for damage to the rudder was approximately $2,000. The Derblay, over 3,476 gross, and 2,065 net, tons, 320 feet in length, 46-foot beam, 24 feet in depth, was of the reasonable value of $220,000, and had a cargo of the reasonable value of $25,000. As part of her cargo she had 600 or 700 cases of dynamite in No. 4T–D.

[1, 2] The fact that the Derblay makes no salvage claim does not deprive the seamen of such claim if, in fact, salvage service was rendered. The Morzhovoi was in distress and in danger of being stranded. While she was only a mile or two off of the regular route of the regular steamers to Cordova, a repetition of the heavy sea that she encountered, which caused the impairment of the rudder, would no doubt have cast her upon the rocky shores, and the choppy seas would have drifted her upon the rocks on shore. There was no danger imminent at the time of the salving, but the service, I think, must be classed as a salvage service of a rather low order.

Meritorious salvage service must be recognized to encourage seamen to go to the rescue of disabled vessels, or else there would be danger of great sacrifice of property and loss of life. The cargo of dynamite on the Derblay had some element of danger, but, under the conditions of the sea at the time and during the towage, this danger was, in fact, nil, while the service performed was such as a competent tug could easily have done, and in so doing have encountered no greater risk than in the ordinary course of employment.

The service here performed, I think, is no doubt salvage service of a low order, and that $1,200 is a liberal salvage charge. This should be divided, 80 per cent. to the Derblay, if claim is made and 20 per cent. to the officers and crew. The officers and members of the crew who participated in the actual service, including all on duty at the time, should be paid triple overtime service for two hours, in addition to participating in division of the balance to be divided among the officers and crew making claim, in proportion to the wages received. The seamen called from their berths have been paid for overtime service rendered by the Derblay, and the amount paid should be deducted from the allowance to these seamen for the account of the Derblay.

An interlocutory order, perhaps, should be entered, requiring all parties who wish to join in this proceeding and file claim to do so within a given time, or be held to have waived the claim, and be barred, to the end that this matter may be speedily closed.